**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-13478

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RONALD LEON HALL, JR.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:20-cr-00070-AW-MAF-1

_____

Before JORDAN, KIDD, and TJOFLAT, Circuit Judges.

PER CURIAM:

Ronald Hall Jr. was sentenced to 15 months' imprisonment followed by an eight-year term of supervised release after committing seven violations of his earlier term of supervised release. Hall

appeals the District Court's imposition of a new extended term of supervised release, citing his "past struggles to abide by supervision conditions." We affirm.

## I. BACKGROUND

### A.

On July 31, 1990, Hall and three co-defendants instigated a violent altercation with a group of passengers in a vehicle. One of Hall's co-defendants fired a weapon into the vehicle, causing the occupants to flee. As they fled, Hall's group fired additional shots, killing one victim. The assailants stole a wallet and ring from the lifeless victim.[1]

Hall was convicted by a jury of second degree murder and strong armed robbery, for which he was sentenced to 27 years' imprisonment. Hall was conditionally released in 2006, but he proceeded to violate the terms of his conditional release four times between 2006 and 2020, resulting in his spending another eight years in state custody.

On November 4, 2020, a federal grand jury indicted Hall on one count of distributing heroin and at least five grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), and (b)(1)(C). Hall pleaded guilty pursuant to a written plea agreement. The District Court accepted his guilty plea and sentenced Hall to

---

[1] According to the arrest warrant, Hall was the individual who stole the wallet and ring. Hall disputes this fact.

25-13478                 Opinion of the Court                 3

48 months' imprisonment followed by an eight-year term of supervised release.

Hall was released in March 2024. But within two days, Hall began testing positive for controlled substances. And by July, he had been arrested three times for violating state law. In November 2024, Hall admitted to three violations of the terms of his federal supervised release. The District Court sentenced Hall to time served plus three days' imprisonment and renewed his eight-year term of supervised release. The District Court ordered Hall to spend his first six months of supervised release in a halfway house.

In compliance with the Court's order, Hall was quickly relocated to a halfway house in Pensacola, Florida. But after a two-month stint at the halfway house, Hall continued to violate the terms of his supervised release. On September 22, 2025, Hall admitted to four new violations: providing false identification to law enforcement officers, abandoning the halfway house without permission, and committing two acts of retail theft. He was sentenced that same day. That sentence gives rise to this appeal.

### B.

Chapter Seven of the Sentencing Guidelines provides recommended revocation sentence ranges for defendants who violate the terms of their supervised release.[2] *See* U.S. Sent'g Guidelines

---

[2] As a technical matter, the Sentencing Commission elected to write Chapter 7 in the form of policy statements rather than guidelines, meaning they are, by their very nature, only advisory. U.S. Sent'g Guidelines Manual § 7A1.

Manual § 7 (U.S. Sent'g Comm'n 2024). Each of Hall's violations was categorized as Grade C, and his Criminal History Category was IV. Therefore, Hall's undisputed revocation sentencing range was between six and twelve months' imprisonment. *See* U.S. Sent'g Guidelines Manual § 7C1.5.

At sentencing, Hall addressed the Court, explaining that he had difficulties finding employment while at the halfway house and that he could not get in contact with his probation officer to explain the situation. While he had hoped to follow the terms of his release, after facing frustrations at the halfway house, he "essentially gave up and . . . was living on the streets." Hall's attorney requested a sentence at the "bottom of the guidelines" and for the District Court "to revoke and terminate his supervision." The Government disagreed, explaining to the Court that Hall "needs to be able to comply with conditions of the program and stick it out." The Government requested an unspecified "period of incarceration" followed by "another chance at a halfway house."

The District Court imposed a revocation sentence of 15 months' imprisonment followed by another eight-year term of supervised release, with the first six months to be spent at a halfway house. Hall appeals.

## II. STANDARD OF REVIEW

We review the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States,* 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007); *United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020) (applying the same standard for a revocation sentence).

### III. Discussion

#### A.

A district court may, upon certain conditions, "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release." 18 U.S.C. § 3583(e)(3). To do so, the district court must: (1) "find by a preponderance of the evidence that the defendant violated a condition of supervised release"; and (2) consider certain enumerated sentencing factors in § 3553(a).[3] *Id.* A revocation sentence is limited to five years' imprisonment for class A felonies. *Id.*

Our review of a sentence is limited. "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. A district court is within its discretion to weigh certain sentencing factors above others. *See United States v. King*, 57 F.4th 1334, 1339 (11th Cir. 2023). And we are forbidden from applying a "presumption of unreasonableness" simply

---

[3] Specifically, sentencing courts must consider § 3553(a)(1), 3553(a)(2)(B)–(D), and 3553(a)(4)–(7). 18 U.S.C. § 3583(e). In *Esteras v. United States*, the Supreme Court held that sentencing courts may *not* consider § 3553(a)(2)(A), the need "to promote respect for the law and to provide just punishment for the offense," because Congress intentionally opted not to list that factor in § 3583. 606 U.S. 185, 188, 145 S. Ct. 2031, 2037 (2025).

because a sentence exceeds the Guidelines range. *Gall*, 552 U.S. at 51, 128 S. Ct. at 597.

Nevertheless, our Court has explained that a sentence imposed is substantively unreasonable where the district court (1) failed to consider "factors that were due significant weight"; (2) afforded "significant weight to an improper or irrelevant factor"; or (3) "commit[ed] a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). "[W]e will remand for resentencing if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006).

### B.

Hall's revocation sentence was substantively reasonable, and the District Court did not abuse its discretion. Hall does not dispute the slightly above-Guidelines term of imprisonment. His sole appeal concerns the District Court's imposition of a new eight-year term of supervised release, which he claims was imposed without meaningful consideration. Specifically, Hall explains:

> [W]hen the lower court imposed the above-guidelines sentence of 15 months' imprisonment, it cited to specific reasons. . . . But when it came to post-incarceration supervision, the court made no such findings . . . The sentencing court's own experience with Mr. Hall, and the personal history described in his PSR,

> clearly indicated that Mr. Hall is not a good fit for su-
> pervision. . . . In doing so, the court set Mr. Hall up
> for failure and imposed a sentence that cannot serve
> the purposes of sentencing.

Appellant's Br. 9–10.

Hall is correct in his assertion that the District Court did not verbalize its rationale behind his additional term of supervised release. But, as this Court has explained before, where a district court imposes a sentence with both imprisonment and supervised release, it is not required "to make two separate explanations." *United States v. Hamilton*, 66 F.4th 1267, 1275 (11th Cir. 2023). "The reason a separate explanation is not required" is because, with the exception of § 3553(a)(2)(A) and (a)(3), "the factors to be considered in imposing a term of supervised release are the same as the factors to be considered in imposing a term of imprisonment." *Id.* "To require the court to mechanically repeat its § 3553(a) findings would be redundant and inefficient." *Id.*

Here, the District Court placed significant emphasis on the need to deter Hall from committing future offenses and to protect the public. It explained that Hall has a record of "committing a crime, doing a short jail sentence, and then committing another crime," which suggests that he "is definitely someone who needs deterrence." Deterrence and protecting the public are permissible revocation sentencing factors, *see* § 3553(a)(2)(B), (C), and, in light of Hall's substantial criminal background, we cannot say that the Court unreasonably weighed them above others.

And while the District Court did not expressly apply this explanation to the new term of supervised release, it clearly applies in equal measure, and the Court was not required to repeat itself. *See Hamilton*, 66 F.4th at 1275. Supervised release, though it offers additional freedoms to a defendant, is still designed to serve as a meaningful deterrent from committing future offenses. It also affords the Government greater supervision over a defendant who may remain a threat to the public.

We do not doubt that Hall has had difficulty complying with the terms of his supervised release. But he admitted to knowingly violating them. And the District Court concluded that deterrence and the need to protect the public outweighed any mitigating factors.[4] We are in no position to second guess that decision. *See Gall*, 552 U.S. at 51, 128 S. Ct. at 597; *King*, 57 F.4th at 1339.

### IV. CONCLUSION

For the foregoing reasons we hold that the District Court did not abuse its discretion.

**AFFIRMED.**

---

[4] We also note that, had Hall not violated his latest term of supervised release, he would continue to have the vast majority of that term left to go. By revoking that term and not replacing it with a new term, the District Court would have, at least to some degree, rewarded Hall for his violations.